UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


RAMON LOPEZ,

                Plaintiff,

v.

                                    Case No. 5:18-cv-263-Oc-34PRL

UNITED STATES OF AMERICA
AND FEDERAL BUREAU
OF PRISONS,

                Defendants.

_____

**ORDER**

**I. Status**

      Plaintiff Ramon Lopez, a federal inmate, initiated this action on May 29, 2018, by filing a pro se Civil Rights Complaint (Doc. 1). In a June 14, 2018 Order, the Court directed Lopez to file an amended complaint on the standard civil rights complaint form. <u>See</u> Order (Doc. 4). On November 8, 2018, Lopez filed his Amended Complaint (AC; Doc. 12) with exhibits (P. Ex.; Doc. 12 at 16-56). In the AC, Lopez names the United States of America (USA) and the Federal Bureau of Prisons (BOP) as Defendants. He asserts claims under the Federal Tort Claims Act (FTCA), Freedom of Information Act (FOIA), and the Administrative Procedure Act (APA). He alleges that BOP employees were negligent when they eliminated cold water from the showers as part of an energy conservation project. Additionally, he states that BOP employees were negligent when they required him to stay in the prison yard where he was exposed to sunlight, extreme heat and cold

as well as inmate violence. As relief, he requests monetary damages for claims one and two under the FTCA against the USA as well as declaratory and injunctive relief under the FOIA (claim three) and the APA (claim four) against the BOP.

This matter is before the Court on Defendants' Motion to Dismiss (Motion; Doc. 17). They submitted exhibits in support of the Motion. See Docs. 17-1 through 17-2.[1] The Court advised Lopez that the granting of a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 15). Lopez filed a response in opposition to the Motion. See Response in Opposition to Defendants' Motion to Dismiss (Response; Doc. 27). In support of his arguments, he also submitted exhibits. See Doc. 27 at 20-36. Thus, Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations[2]

Lopez asserts that the events giving rise to his claims began in April 2015 at the United States Penitentiary in Coleman, Florida (Coleman USP-1). See AC at 4. First, he asserts that BOP employees subjected him to excessively hot showers when they eliminated cold water from the showers as part of an energy conservation project. See id.

---

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] The AC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the AC and may differ from those that ultimately can be proved.

at 6. He alleges that his use of excessively hot water caused him to suffer with skin irritation, rashes, dryness, itching, and stinging as well as the loss of skin texture and natural oils. See id. According to Lopez, he incurred "unnecessary/unwanted expenses" when he purchased skin lotions, creams, oils, and medications to "diminish the discomfort and harmful effects" that the hot water caused. Id. He states that he sometimes skipped hot showers or took "bird bath[s]" when there was "unbearable" discomfort. Id.

Additionally, he asserts that the BOP corrections staff required him and other inmates to stay in the prison yard for up to forty-five minutes or more after lunch to accommodate their "demand to make one move every hour." P. Ex., Doc. 12 at 24. He asserts that the prolonged stays in the prison yard exposed him to "all types of environmental inclemency," such as rain, extreme heat, cold temperatures, and ultraviolet (UV) rays without any shelter or protective clothing. AC at 7. He also states that he was exposed to inmate violence. See id. Lopez suggests that the BOP officers should have permitted him to return directly to his housing unit after leaving the dining hall. See id. at 6-7. He avers that prolonged exposure to heat and sunlight could cause skin damage and vision defects. See id. at 7. According to Lopez, he skipped lunch to avoid the summer heat and incurred expenses for hats, sunglasses, sunscreen, and medications to mitigate the damaging effects. See id. He also states that he postponed treatment for a prostate infection because sun exposure while taking Ciprofloxacin, the prescribed medication, could be harmful. See id. He avers that medical personnel denied him a pass that would have permitted him to return directly to his housing unit. See id.

As his third claim, Lopez asserts that the BOP violated the FOIA when it ignored, denied or failed to respond to his requests for information or documents relating to the elimination of cold water from the showers. See id. at 7-8. With regard to his fourth claim, he states the BOP violated the APA when it subjected him to excessively hot showers and prolonged exposure to heat and sunlight. See id. at 8-9.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262 63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998)

---

[3] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

(internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706).

A court considering a motion to dismiss under Rule 12(b), Federal Rules of Civil Procedure (Rule(s)), is generally limited to the facts contained in the operative complaint and any attached exhibits, including documents referred to in the complaint that are central to the plaintiff's claims. <u>See</u> <u>Wilchombe v. TeeVee Toons, Inc.</u>, 555 F.3d 949, 959 (11th Cir. 2009). Nevertheless, when reviewing a motion to dismiss under Rule 12(b)(6), "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." <u>Maxcess, Inc. v. Lucent Techs., Inc.</u>, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1135 (11th Cir. 2002)); <u>Day v. Taylor</u>, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citation omitted).

### IV. Summary of the Arguments

In the Motion, Defendants request dismissal of Lopez's FTCA, FOIA, and APA claims against them. They argue that Lopez's FTCA hot shower claim is barred by the FTCA's discretionary function exception. <u>See</u> Motion at 14-17. Next, they contend that Lopez fails to state plausible FTCA claims. <u>See</u> <u>id.</u> at 7-9. They also assert that Lopez neither exhausted his administrative remedies nor demonstrated that the BOP violated the FOIA. <u>See</u> <u>id.</u> at 9-13. Additionally, they argue that Lopez fails to state a plausible APA claim and lacks standing to bring such a claim. <u>See</u> <u>id.</u> at 13-14. In his Response,

Lopez maintains that he states plausible FTCA, FOIA, and APA claims against Defendants. <u>See</u> Response at 3-19.

<h2 style="text-align:center">V. Discussion</h2>

<h3 style="text-align:center">A. Federal Tort Claims Act</h3>

The FTCA waives the United States' sovereign immunity from suit in federal courts for certain tort claims arising from the actions of its employees. <u>Cohen v. United States</u>, 151 F.3d 1338, 1340 (11th Cir. 1998); <u>Ochran v. United States</u>, 117 F.3d 495, 499 (11th Cir. 1997). Specifically, Congress waived sovereign immunity and granted consent for the United States to be sued for acts committed by any "employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Nevertheless, the liability of the United States under the FTCA is subject to the exceptions contained in 28 U.S.C. § 2680, including the discretionary function exception at issue in the instant case. The discretionary function exception revives sovereign immunity in that it provides that a plaintiff may not bring a tort claim based on a government actor's "exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [is] abused." 28 U.S.C. § 2680(a). Notably, "[w]hen the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists." <u>United States Aviation Underwriters, Inc. v. United States</u>, 562 F.3d 1297, 1299 (11th Cir. 2009). Additionally, exceptions to the FTCA are "strictly construed in favor of the United States." <u>Zelaya v. United States</u>, 781 F.3d 1315, 1322 (11th Cir. 2015) (quoting

JBP Acquisitions, LP v. United States ex rel. F.D.I.C., 224 F.3d 1260, 1263-64 (11th Cir. 2000)).

The United States Supreme Court has established a two-part test to determine whether challenged conduct falls within the discretionary function exception. See United States v. Gaubert, 499 U.S. 315, 322 (1991); Berkovitz v. United States, 486 U.S. 531, 536 (1988). In deciding whether the discretionary function exception applies, the Court first must determine whether the government actor's challenged conduct involves an element of judgment or choice. Zelaya, 781 F.3d at 1329-30. The inquiry focuses on "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997). "[I]f a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and "the employee has no rightful option but to adhere to the directive," the conduct does not involve an element of choice and therefore is not discretionary. Berkovitz, 486 U.S. at 536. Thus, a plaintiff must identify a controlling federal statute, regulation, or policy that specifically prescribes a course of action, see id., "embodying a fixed or readily ascertainable standard," Autery v. United States, 992 F.2d 1523, 1529 (11th Cir. 1993) (internal quotations omitted), if he is to escape the discretionary function exception under the first step of the Gaubert test. If a plaintiff fails to identify such a statute, regulation, or policy, the government actor's conduct, or lack thereof, will be found to involve an element of judgment or choice, and the analysis will proceed to the second step.

At the second step, the Court must determine if the judgment is "the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322-23 (quoting Berkovitz, 486 U.S. at 536). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Gaubert, 499 U.S. at 323 (quoting United States v. Varig Airlines, 467 U.S. 797, 814 (1984)) (internal quotations omitted). Thus, under the second prong, the Court must determine whether the challenged act is "'susceptible to policy analysis.'" Hughes, 110 F.3d at 768 (quoting Powers v. United States, 996 F.2d 1121, 1125 (11th Cir.1993)). The exception does not require there to have been actual "weighing of policy considerations." Hughes, 110 F.3d at 768. Nor is it limited to decisions at the policy or planning level; it may include day-to-day management. Gaubert, 499 U.S. at 325; Hughes, 110 F.3d at 768. The Court focuses on "the nature of the challenged decision in an objective, or general sense" and asks whether that decision is one that would "inherently … be grounded in considerations of policy." Autery, 992 F.2d at 1530-31 (internal quotations omitted).

### 1. Discretionary Function Exception to the FTCA's Waiver of Sovereign Immunity

The Court turns first to the applicability of the discretionary function exception to Lopez's FTCA claim against the USA involving the BOP's decision to change the shower heads and thermostatically control the shower water temperatures as part of an energy-saving project. The crux of Lopez's claim is that the BOP's conservation project resulted in excessively hot showers which led to his skin irritation and discomfort. In the AC, he asserts that BOP employees were negligent when they installed computerized shower

fixtures that provide hot water at temperatures oscillating between 100 and 120 degrees Fahrenheit. See AC at 6. Defendant USA maintains that the BOP's decision to install energy-saving showers falls under the discretionary function exception, and therefore Lopez's FTCA claim must be dismissed for lack of subject matter jurisdiction. See Motion at 14-17. In response, Lopez asserts that the BOP's decision to control the shower water temperatures is not a discretionary function, but instead a "reckless, negligent and harmful action that poses an actual and future unreasonable risk of serious damages to plaintiff's health." Response at 10-11. He argues that Defendant USA's claim that the decision to install energy-saving showers was a discretionary function is "irrelevant" and "meaningless" with respect to his assertion that the BOP's decision resulted in excessively hot showers. Id. at 11. He maintains that "the minimal standard of decency" requires showers with "free use of hot and cold water." Id. at 8.

The BOP's decision to change the shower heads and thermostatically control the water temperatures at 100 to 120 degrees inherently involved an element of choice grounded in several policy considerations, including the allocation of finite resources and promotion of healthy personal hygienic practices. Notably, Lopez does not identify any relevant federal statute, regulation, or policy that mandated a particular course of action for the BOP with respect to the manner in which it provides showers and hygienic cleansing for inmates. The United States Code provides, in relevant part, that the BOP, under the Attorney General's direction, shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). Thus, although the BOP

owes a general duty of care to safeguard its prisoners, to make personal hygiene supplies available to them, and to provide them with an opportunity to shower regularly, see Dugan v. Warden, FCC Coleman, USP I, 673 F. App'x 940, 942 n.4 (11th Cir. 2016), the BOP "retains considerable discretion to determine the means by which it will fulfill these duties," id. at 942-43 (citing Cohen, 151 F.3d at 1342). In response to one of Lopez's grievances, the Regional Director explained the BOP's Energy Conservation Project.

> This is in response to your Regional Administrative Remedy Appeal receipted December 22, 2015. You allege the new energy saving shower heads produce water temperatures which are excessive. As relief, you request the water temperature be reduced from 105° F to 95° F.
>
> BOP Program Statement 4200.10, Facilities Operations Manual, Chapter 6, section E.1 states:
>
>> Primary hot water temperatures must be maintained as low as possible while still ensuring an adequate supply of 105 degree Fahrenheit water at the tap in inmate housing areas.
>
> The American Correctional Association's (ACA) guide, Standards for Adult Correctional Institutions, 4th Edition, Section 4-4139, states:
>
>> Water for showers is thermostatically controlled to temperatures ranging from 100 degrees Fahrenheit to 120 degrees Fahrenheit to ensure the safety of inmates and to promote hygienic practices.[4]

---

[4] The ACA provides the following explanation for thermostatically controlling water temperatures.

> Comment: Offenders can use scalding showers as a weapon against, or punishment for, other inmates. Also, accidental injury could occur when cold water is drawn in other areas, thereby unexpectedly elevating the hot water in showers to scalding temperatures. Water temperatures below 100 degrees Fahrenheit are uncomfortable and may deter an

> Therefore, the current shower temperature of 105º F is compliant with both the BOP Program Statement and the lower side of the temperature range set in ACA guidelines. A temperature of 95º F, although comfortable to you, might deter other inmates from pursuing good hygienic practices.

P. Ex., Doc. 12 at 37. Thus, the BOP's decision to change the shower fixtures and thermostatically control the water temperatures is grounded in sound public policy reasons, such as its conservation of limited resources and promotion of inmate hygiene, health and safety. Because the BOP's decision falls within the discretionary function exception to the FTCA's waiver of sovereign immunity, no federal subject matter jurisdiction exists. As such, Defendants' Motion is due to be granted to the extent that Lopez's FTCA claim relating to excessively hot showers will be dismissed without prejudice.

### 2. Exposure to Inclement Weather and Inmate Violence

As claim two, Lopez asserts that the BOP corrections staff prolonged his stays in the prison yard after meals, which exposed him to extreme heat, UV rays, rain, cold temperatures, and inmate violence. See AC at 7. Defendant USA maintains that Lopez fails "to plead all three elements required under Florida law to establish negligence." Motion at 8. They state that he fails to plead "the specific duty owed to him or how keeping

---

> individual from pursuing good hygienic practices. The temperature controls should not preclude the use of water at higher temperatures, if needed, in other areas of the institution, such as kitchens.

The American Correctional Association Guide, Standards for Adult Correctional Institutions, 4th Edition, July 1, 2003, Section 4-4139, Comment.

him in the prison yard breached that duty of care." Id. In his Response, Lopez asserts that he sufficiently states a plausible negligence claim. See Response at 6.

The law applicable to an FTCA claim is the law of the state where the tortious act allegedly occurred. 28 U.S.C. § 1346(b)(1); Zelaya, 781 F.3d at 1322. The events on which Lopez bases his claims occurred in Florida, and therefore Florida law applies. To state a cause of action for negligence under Florida law, a plaintiff must plausibly allege: (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) the defendant's breach of that duty, (3) a causal connection between the defendant's breach and the plaintiff's injury, and (4) actual loss or damage resulting from the injury. See Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182 (Fla. 2003) (citation omitted). Viewing Lopez's allegations in the light most favorable to him, as the Court must at this motion-to-dismiss stage of the proceedings, Lopez has stated a plausible negligence claim under the FTCA with respect to his alleged prolonged exposure to UV rays and mid-day summer heat in the prison yard. As such, Defendants' Motion is due to be denied as to Lopez's FTCA claim relating to prolonged exposure to UV rays and mid-day summer heat. However, Lopez fails to state plausible FTCA claims relating to his assertion that BOP staff exposed him to rain, cold temperatures, and inmate violence in the prison yard. His claims on these issues are wholly conclusory as he provides no facts relating to any incident(s) and resulting injuries from such exposure. As such, the Motion is due to be granted as to his FTCA claim of prolonged exposure to rain, cold temperatures, and inmate violence.

## B. Freedom of Information Act

As claim three, Lopez asserts that the BOP violated the FOIA when it denied or failed to respond to his requests for information or documents relating to the BOP's elimination of cold water from the prison showers. See AC at 7. As relief, Lopez requests that the Court direct the BOP to provide him with documents that are responsive to his FOIA requests. See AC at 9. The BOP maintains that Lopez neither exhausted his remedies under the FOIA, nor established that he has been denied documents responsive to his requests. See Motion at 9-13. The BOP further asserts that it "has already stated it would provide the documents as soon as Lopez pays the required fees." Motion at 13. In his Response, Lopez contends that he has exhausted his remedies under the FOIA, and therefore, the matter is ripe for judicial review. See Response at 11-15.

Lopez's FOIA documents, attached as exhibits to his AC,[5] reflect the following chronology of events as the basis for his FOIA assertions against the BOP. According to Lopez, on June 25, 2016, he requested information from the BOP relating to a contract between the BOP and a private company ("probably called Energy Solution") that was "supposed to implement an energy conservation project" at Coleman USP-1 that resulted in the elimination of cold shower water and the provision of hot water at temperatures between 105 and 121 degrees Fahrenheit. P. Ex. B3, Doc. 12 at 31. Approximately one month later, the BOP acknowledged receipt of Lopez's FOIA request and assigned it to

---

[5] Lopez attached relevant FOIA documents as exhibits to his AC, see P. Ex., Doc. 12 at 30-49, and Defendants also submitted the same documents as exhibits to their Motion, see Doc. 17-2 at 2-21.

a "complex" track requiring up to nine months for processing.[6] Id. On November 21, 2016,

BOP FOI/PA Specialist A. White stated, in pertinent part:

> This is in response to the above referenced Freedom of Information Act (FOIA) request [number 2016-06097]. A copy of your request is attached to this letter.
>
> **Bureau of Prisons staff thoroughly searched for the records you requested using the terms and search parameters referenced in your request. However, we located no records responsive to your request.**
>
> A search was conducted through the files of the Facilities and Financial Management Department, and no records were found. There are no other locations where this type of record would be stored that would likely lead to the discovery of a responsive record with a reasonable amount of effort.

P. Ex. B2, Doc. 12 at 30 (emphasis added). On December 28, 2016, Lopez appealed the

BOP's response to the Director, Office of Information Policy (OIP), United States

Department of Justice. See P. Ex. B3, Doc. 12 at 31. On March 17, 2017, Chief Sean R.

O'Neill, Administrative Appeals Staff, affirmed the BOP's action, stating in pertinent part:

> You appealed from the action of the Federal Bureau of Prisons (BOP) on your Freedom of Information Act request for access to records concerning a contractual obligation between BOP and an energy saving company relating to the elimination of cold water from the showers at your facility, the installment of solely hot water in the showers at a temperature of one hundred and five degrees Fahrenheit or more, and any information justifying the elimination of cold water.
>
> After carefully considering your appeal, I am affirming BOP's action on your request. BOP informed you that it could locate no responsive records subject to the FOIA in its files. I have determined that BOP's action was correct and that it conducted an adequate, reasonable search for such records.

---

[6] See P. Ex. B8, Doc. 12 at 40 ("Processing complex requests may take up to nine months.").

BOP searched multiple databases for potentially responsive records concerning the alleged elimination of cold water from facility showers, but no such records were located.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of BOP in response to your request. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

P. Ex. B4, Doc. 12 at 33. Lopez asked the OIP to reconsider its decision. See P. Ex. B5, Doc. 12 at 35. Chief O'Neill determined that the OIP's March 17, 2017 decision was "appropriate" and again notified Lopez that the FOIA permits him to file a lawsuit if he is dissatisfied with the OIP's decision. P. Ex. B6, Doc. 12 at 38.

Shortly after the BOP notified Lopez that staff "located no records responsive" to his request, P. Ex. B2, Doc. 12 at 30, Lopez clarified his FOIA request number 6097 on December 13, 2016, see P. Ex. B7, Doc. 12 at 39. He stated, in pertinent part:

This follows your response to the … above referenced FOI[A] request, and attempts to clarify/specify it, thus I have not be[en] obligated to seek further administrative or judicial review of this matter.

In your response[,] you alleged to have not found any information, according to the parameters referenced in my request. Assuming, that such is correct, I'm rephrasing it and attaching documents probing the existence of those documents or, at least claimed to exist by BOP staff. See attachments.

16

**Please send me copies of the contract between the Bureau of Prisons, and the agency or company (… that is named Energy Solution) implementing the Energy Conservation Project,** that among others eliminated the cold water from shower[] head[s], and limited such to hot water at temperature[s] above $105^0$ Fahrenheit. **If there is not [a] contract between the above entities, please sen[d] any document authorizing the elimination of the cold water and limiting such to hot water, from the BOP showers**.

P. Ex. B7, Doc. 12 at 39 (emphasis added). The BOP responded on December 22, 2016,

stating in pertinent part:

The Federal Bureau of Prisons (BOP) received your Freedom of Information Act/Privacy Act (FOIA/PA) request. Your request has been assigned a number and forwarded to the processing office noted below. Please make a note of the request number and processing office as you will need to include it in any correspondence or inquiry regarding your request. A copy of the first page of your request is attached to help you more easily keep track of your request.

**FOIA/PA Request Number: 2017-01781**
Processing Office: CO (Central Office)

The time needed to complete our processing of your request depends on the complexity of our records search and the volume and complexity of any records located. Each request is assigned to one of three tracks: simple, complex, or expedited. Due to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first-in, first-out basis in relation to other requests in the same track. **Your request was assigned to the complex track and placed in chronological order based on the date of receipt.**

We determined unusual circumstances exist as the documents responsive to your request must be searched for and collected from a field office, and/or the documents responsive to your request are expected to be voluminous and will require significant time to review, and/or your request requires consultation with at least one other agency with a

substantial interest in your request. Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. **Processing complex requests may take up to nine months. Pursuant to 28 C.F.R. § 16.5(b) and (c), you may narrow or modify your request in an effort to reduce the processing time.**

Pursuant to 28 C.F.R. § 16.10, in certain circumstances we are required to charge fees for time spent searching for or duplicating responsive documents. If we anticipate your fees will be in excess of $25.00 or the amount you have indicated you are willing to pay, we will notify you of the estimated amount. At that time, you will have the option to reformulate your request to reduce the fees. If you requested a fee waiver, we will make a decision whether to grant your request after we determine whether fees will be assessed for this request.

P. Ex. B8, Doc. 12 at 40-41 (emphasis added). On January 3, 2017, Kimberly Blow

notified Lopez of the estimated fee for processing his request, stating in pertinent part:

This is in response to the above referenced Freedom of Information Act (FOIA) request. A copy of the first page of your request is attached. We determined your request could result in a fee higher than either $25 or the amount you agreed to pay. An itemized invoice reflecting the estimated total cost associated with your request is attached.[7] **The estimated fee is $75.00.**

Because the fee estimate is greater than $25.00, we are notifying you of this anticipated cost before we begin processing your request. In accordance with 28 C.F.R. § 16.10(e), you must indicate, in writing, your willingness to pay the actual or estimated total fee or a designated amount of fees before we continue processing your request. You may complete the top portion of the attached form.

**Alternatively, you can reformulate your request to meet your needs at a lower cost.** If you want to reformulate your request, you may complete the bottom portion of the attached form ….

---

[7] Neither party submitted the itemized invoice.

P. Ex. B9, Doc. 12 at 43 (emphasis added). On January 19, 2017, Lopez modified his

FOIA request as follows:

> Any information from the documents, "found responsive to my request" specifically related to the removal of cold/hot water shower head[s], and installation of new shower head[s] only with hot water, and to the temperature[s] that water have to use in that [sic] new shower heads.

P. Ex. B10, Doc. 12 at 45. On April 20th, FOIA/PA Specialist A. White stated, in pertinent

part:

> This letter is in response to the above referenced correspondence wherein you clarified and re-submitted your request to seek "a copy of the contract between the BOP and the agency/company (Energy Solution) that among others, eliminated the cold water from shower heads, and limited such to hot water at temperatures above 105 degrees Fahrenheit." You further state that "if there is no contract between the aforementioned entities, you seek records authorizing the elimination of the cold water and limiting such to hot water from the BOP showers."
>
> Federal Bureau of Prisons staff conducted a search for responsive records. Staff located a contract with over 1,600 pages. On January 3, 2017, this office sent you a fee estimate advising that the processing of the records you seek would result in a $75 fee. On April 17, 2017, this office received a letter in which you requested, "any information from the documents, 'found responsive to my request' specifically related to the removal of cold/hot water shower head, and installation of new shower head only with hot water, and to the temperature that water have to use in that new shower heads."
>
> **Please be advised, this office is not obligated to conduct legal research and extract only specific portions of records that may, or may not, fall within the purview of your reformulated request. If you wish to reduce fees, we are able to provide you with portions of the contract; for example, Statement of Work. Amendments, Subparts,**

**etc. However, we will not conduct fishing expeditions through agency files in order to explore possibilities of records that fall within range of your request. The FOIA is limited to requiring agencies to provide access to reasonably described, nonexempt, and existing agency records.** Finally, please note that we reaffirm our determination for FOIA request 2016-06097 that there are no responsive records/documents relating to the elimination of cold water from BOP showers.

If you have any questions, you have the right to seek assistance from the undersigned or BOP's FOIA Public Liaison, Mr. C. Darnell Stroble ((202) 616-7750).

**If you are not satisfied with my response to this request, you may administratively appeal** by writing to the Director, Office of Information Policy (OIP), United States Department of Justice[.]

P. Ex. B11, Doc. 12 at 46 (emphasis added). Lopez did not appeal the BOP's decision.

On May 2, 2017, and October 22, 2017, Lopez modified his FOIA requests. See P. Exs. B12; 13, Doc. 12 at 48-49. Neither party submitted additional exhibits reflecting any further action on the request. Defendants maintain that Lopez failed to exhaust his administrative remedies. Additionally, they assert that "[t]he BOP has already stated it would provide the documents as soon as Lopez pays the required fee." Motion at 13 (citing Doc. 12 at 40-41). According to Lopez, he has "constructively" exhausted his administrative remedies because the BOP has not responded to his reformulated FOIA requests. Response at 13.

While FOIA provides for judicial review of adverse agency determinations, it "clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts." Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). Indeed, FOIA's statutory scheme specifically provides for an administrative appeal following an

agency's denial of a FOIA request. The purpose of this exhaustion requirement is to allow a federal agency to "exercise its discretion and authority, as well as create a descriptive factual record for the district court to review if necessary." Id. FOIA's statutory scheme provides two methods of satisfying the exhaustion requirement: constructive exhaustion and actual exhaustion. See id. at 1368. "Constructive exhaustion occurs when certain statutory requirements are not met by the agency." Id. 5 U.S.C. Section 552(a)(6)(C) specifically provides that if an agency has not responded to a FOIA request within the statutory time limits the requester "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C). The statutory limits referenced in 5 U.S.C. § 552(a)(6)(C) govern the time in which an agency must respond to information requests as well as the time in which an agency must respond to an appeal. See 5 U.S.C. § 552(a)(6) (an agency "make a determination with respect to any appeal within twenty days . . . after the receipt of such appeal.").

Once an agency has responded to a request, however, FOIA requires actual exhaustion of administrative remedies. See Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 63-64 (D.C. Cir. 1990). Actual exhaustion requires a party to appeal any adverse agency determination before filing suit. See id. at 64-65. Thus if, a requester does not file suit upon expiration of the applicable time limits, but instead waits for the agency's response, then upon receipt of the response the requester is required to submit an appeal to exhaust its administrative remedies before filing suit regardless of the agency's non-compliance with the statutory time limits. Id. at 63-65. To trigger the requester's obligation to exhaust its administrative remedies, the agency response must include: "the agency's

determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." Id.

Additionally, in order to obtain judicial review under FOIA, a requesting party must satisfy its statutory obligation to pay any and all fees which the agency is authorized to collect. Pollack v. Dep't of Justice, 49 F.3d 115, 119 (4th Cir. 1995). Indeed, exhaustion, whether constructive or actual, "does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." Oglesby, 920 F.2d at 66.

In the instant action, the BOP responded to Lopez's FOIA request, stating that he owed a processing fee and that the agency could not sift through its files to explore records that may potentially fall within the range of Lopez's request. See P. Ex. B11, Doc. 12 at 46. Additionally, the BOP notified Lopez that he could appeal to the OIP Director if he was dissatisfied with the BOP's response. See id. Because the BOP responded to Lopez's request, constructive exhaustion was not available to satisfy the exhaustion requirement. See Oglesby, 920 F.2d 57, 63-64. Instead, Lopez was required to accomplish actual exhaustion. Id. Lopez failed to clarify his request or appeal the BOP's response to the OIP Director. Moreover, he has not paid the $75.00 fee required to obtain judicial review. See id. at 66 (noting that exhaustion requires that the fee be paid or the denial of a fee waiver be appealed); see also Plotkin v. IRS, 100 A.F.T.R. 2d 2007-5393 (M.D. Fla. 2007). Thus, Lopez has failed to properly exhaust his administrative remedies, and Defendants' Motion to dismiss his FOIA claim is due to be granted.

## C. Administrative Procedure Act

As claim four, Lopez asserts that the BOP violated the APA when it subjected him to excessively hot showers and prolonged exposure to inclement weather. <u>See</u> AC at 8-9. He states that he is not opposed to the BOP's implementation of the energy conservation project, but takes issue with the "secrecy" as well as the "questionable mysterious" circumstances surrounding the implementation of the project. <u>Id.</u> at 9. As relief, he requests that the Court declare the BOP's decisions to be "unlawful, arbitrary, capricious, harmful, and lacking … any legitimate penological interest," and therefore violative of the APA. <u>Id.</u> at 9. Defendant BOP asserts that the Court is without jurisdiction under the APA to review the BOP's decision to install energy-saving showers, a discretionary function of the BOP, because the APA has limited itself to review of non-discretionary duties. <u>See</u> Motion at 14. The BOP also maintains that Lopez lacks standing because he "makes no reference to a statute and therefore has no claim that his so-called injury falls within a statutory zone of interests." <u>Id.</u> at 13 (citing 5 U.S.C. § 704).[8] Additionally, the BOP argues that "there has been no final agency action as contemplated by 5 U.S.C. § 704, and therefore there is nothing for this Court to review under the APA." <u>Id.</u> Lopez maintains that he has met the APA requirements and states plausible claims

---

[8] A plaintiff who brings suit under the APA must establish that his injury-in-fact "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." <u>Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers</u>, 781 F.3d 1271, 1279 (11th Cir. 2015) (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 883 (1990)).

relating to the BOP's decisions as to excessively hot showers and harmful UV exposure. See Response at 15-19.

The APA (5 U.S.C. § 551 et seq.), together with 28 U.S.C. § 1331, the federal question statute, may confer jurisdiction on federal district courts over a claim that an agency has violated the APA. See Califano v. Sanders, 430 U.S. 99, 105 (1977). The APA generally affords federal judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Under the APA, federal courts may review agency action where the action is "made reviewable by statute" or the action is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Under the APA, a court may review an agency's interpretation of a statute and set aside an agency action or conclusion that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); see also Serrano v. U.S. Att'y Gen., 655 F.3d 1260, 1264 (11th Cir. 2011) ("Courts may, under the Administrative Procedure Act, review an agency's interpretation of a statute."). However, the APA also provides that it applies except to the extent that (1) "statutes preclude judicial review," or (2) "agency action is committed to agency judicial discretion by law." 5 U.S.C. § 701(a)(1)-(2).

As a procedural statute, the APA applies to all federal government agencies, and therefore applies to the BOP. Preliminarily, the BOP contends that its decision to install energy-saving showers is a discretionary function of the BOP, and therefore the Court is without jurisdiction under the APA to review its decision. See Motion at 14. The Court agrees. See supra Section A. 1. (relating to FTCA claim one); 5 U.S.C. § 701(a)(2).

24

Indeed, the APA was enacted to ensure fair and just agency rules. It requires that federal agencies, such as the BOP, provide notice of proposed rulemaking and an opportunity for interested persons to participate in that rulemaking. See 5 U.S.C. § 553(b)-(c). Notably, Lopez neither references the BOP's interpretation of a federal statute nor challenges its promulgation of an agency rule.[9] Additionally, as to Lopez's assertions that the BOP corrections staff required that he stay in the prison yard for prolonged periods of time, he provides no facts relating to the BOP's alleged APA violation, and therefore fails to state a plausible APA claim. As such, Defendants' Motion is due to be granted as to Lopez's APA claims.

Therefore, it is now

**ORDERED**:

1.      Defendants' Motion to Dismiss (Doc. 17) is **GRANTED** as to Lopez's FTCA claim against the USA relating to excessively hot showers (claim one), and the claim is **DISMISSED without prejudice** because no federal subject matter jurisdiction exists.

2.      Defendants' Motion to Dismiss (Doc. 17) is **GRANTED** as to Lopez's (1) FTCA claim against the USA relating to prolonged exposure to rain, cold temperatures, and inmate violence (claim two); (2) FOIA claim against the BOP (claim three); and (3) APA claims against the BOP (claim four). The BOP is **DISMISSED** as a Defendant in this action, and the **Clerk is directed** to make the appropriate notation on the docket.

---

[9] A program statement is an internal agency guideline that is not subject to the notice and comment requirements of the APA. See Cook v. Wiley, 208 F.3d 1314, 1317-19 (11th Cir. 2000).

3.    Defendants' Motion to Dismiss (Doc. 17) is **DENIED** as to Lopez's FTCA claim against the USA relating to prolonged exposure to UV rays and mid-day summer heat (claim two).

4.    Defendant, **no later than April 30, 2020**, shall answer or otherwise respond to Lopez's remaining FTCA claim.

**DONE AND ORDERED** in Chambers, this 27th day of March, 2020.

MARCIA MORALES HOWARD
United States District Judge

sc 3/24
c:
Ramon Lopez
Counsel of Record